1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

JOSE AVINA,

        Petitioner,

  v.

DARREL G. ADAMS,

        Respondent.

)
)
)
)
)
)
)
)
)
)
)
)

1:10-cv-00790 AWI MJS HC

FINDINGS AND RECOMMENDATION
REGARDING RESPONDENT'S MOTION
TO DISMISS

(Doc. 32)

Petitioner is a state prisoner proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. He is represented by Robert Navarro, Esq. Respondent is represented by Janine W. Boomer, Esq., of the Office of the Attorney General for the State of California.

**I.**    **BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections. On May 5, 2010, Petitioner filed the instant petition challenging a 2008 prison disciplinary finding that resulted in a ninety day loss of good time credits. (See Pet., ECF No. 1, p. 5.) Petitioner also asserts that the disciplinary violation contributed to a ten year parole denial by the Board of Parole Hearings ("Board"). (Id.)

U.S. District Court
E. D. California

1    On November 10, 2010, Respondent filed a motion to dismiss the petition for failure to

2    state a cognizable claim.  Respondent alleges that the disciplinary decision does not affect the

3    fact or duration of Petitioner's confinement. On July 22, 2011, the Magistrate Judge issued

4    findings and a recommendation that the motion to dismiss be denied. On August 23, 2011,

5    Respondent filed objections to the findings and recommendation, and on September 26, 2011,

6    Petitioner filed an opposition to Respondent's objections.

7    On September 30, 2011, the District Court, without adopting or rejecting the findings

8    and recommendation,  ordered the Magistrate Judge to further consider the matter "in light of

9    intervening persuasive authority."

10   **II.    ISSUE**

11   The core issue presented on this motion is whether Petitioner, who has, as a product

12   of a disciplinary violation, lost good time credits after having become eligible for parole, may

13   challenge the disciplinary proceeding by way of habeas, a civil rights action, or both.

14   Federal courts in this and in other districts have struggled with and reached different

15   conclusions on this very issue. Having reviewed relevant case law to include the most recent

16   Supreme Court and Ninth Circuit Court of Appeals pronouncements on the subject, the

17   undersigned previously concluded that  Petitioner's claim was properly before the Court on writ

18   of habeas corpus. The District Court, aware of a divergence in approaches in such cases,

19   directed further review to ensure consideration of intervening cases.  Having conducted that

20   review, the undersigned concludes that Supreme Court and Ninth Circuit authority, although

21   open to interpretation, dictates restatement and resubmission of this Court's original findings

22   and recommendation.

23   **III.   DISCUSSION**

24       **A.    Respondent's Assertions Regarding Cognizability**

25   Respondent, in his motion to dismiss, contends that because Petitioner has already

26   served beyond his minimum eligibility parole date ("MEPD") and is already being considered

27   for parole suitability hearings, the disciplinary violation does not shorten or otherwise impact

28   the fact or duration of Petitioner's confinement. Thus, Respondent argues that Petitioner's

claim does not warrant review in these federal habeas proceedings.

Respondent's arguments are based on specific factual claims regarding the functioning and interplay between time credits and parole eligibility and suitability. In general, Respondent asserts that credit losses have no effect on an indeterminate sentence but for determining a petitioner's minimum eligible parole date (i.e., when a petitioner is able to have parole suitability hearings).

In his motion to dismiss, Respondent makes the following statements regarding the application of time credits:

1. "The credits that inmates earn under the California Penal Code, and may forfeit for misbehavior in prison, are applicable only to determinate sentences." (Mot. at 4.)

2. "Once the inmate is found suitable for parole, his actual term of incarceration will not the determined by statutory credits, but by the parole board." (Id., citing Cal. Code Regs. tit. 15, §§ 2401-2403.)

3. "Once the inmate is found suitable for parole, his actual term of incarceration will not the determined by statutory credits, but by the parole board. The board sets a base term of confinement, and has the discretion to shorten that term through a separate post-conviction credit scheme." (Id., citing Cal. Code Regs. tit. 15, §§ 2401-2403.) "When Avina is released from prison will depend on when the parole board finds him suitable for parole, what base term the board sets for Avina, and how much post-conviction credit the Board elects to apply to that term." (Id. at 5.)

4. Respondent attached a copy of Petitioner's parole suitability hearing to the motion. While acknowledging that the parole board did rely on the disciplinary violation, Respondent asserts, "the single disciplinary violation challenged here was not the basis of Board's denial as there were many circumstances tending to show Avina's unsuitability for parole." (Id. at 6.)

Based on these factual assertions, Respondent makes two legal arguments. First, Respondent argues that the disciplinary violation does not necessarily affect the duration of Petitioner's confinement and therefore is not cognizable by way of a petition of habeas corpus. Further, Respondent asserts that habeas corpus jurisdiction does not exist as the effect of the

disciplinary hearing on a parole suitability hearing is too speculative. (Mot. At 5., citing Sandin v. Conner, 515 U.S. 472, 487 (1995).)

The Court will address these issues and Respondent's assertions below, after first tracing the development of the law in this area.

**B.    Supreme Court Decisions Regarding Habeas Corpus Jurisdiction**

In general, the Supreme Court has explained that federal habeas jurisdiction lies for claims that go to "the validity of the fact or length of [prison] confinement." See Preiser v. Rodriguez, 411 U.S. 475, 490, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973).

The Supreme Court last discussed the distinction between habeas corpus and § 1983 in Skinner v. Switzer, 131 S. Ct. 1289 (2011).  The Court explained:

> When may a state prisoner, complaining of unconstitutional state action, pursue a civil rights claim under § 1983, and when is habeas corpus the prisoner's sole remedy? This Court has several times considered that question. Pathmarking here is Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994). ... When "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," the Court held, § 1983 is not an available remedy. Ibid. "But if . . . the plaintiff's action, even if successful, will not demonstrate the invalidity of [his conviction or sentence], the [ § 1983] action should be allowed to proceed . . . ." Ibid.

Skinner, 131 S. Ct. at 1298.

Further, the Court used conditional language in describing how in cases that do not "necessarily spell speedier release, however, suit *may* be brought under § 1983." Skinner, 131 S. Ct. at 1293 (citation omitted, emphasis added).

The Supreme Court's historical approach to the issue is enlightening. It further elaborated on the distinction between habeas and § 1983 in  Wilkinson v. Dotson, 544 U.S. 74 (2005). In Wilkinson the Court described the progression of  the relationship between the two remedies.

First, in Wilkinson, the Court described its decision in Preiser v. Rodriguez, 411 U.S. 475, 489, 36 L. Ed. 2d 439, 93 S. Ct. 1827 (1973).

> In that case, state prisoners brought civil rights actions attacking the constitutionality of prison disciplinary proceedings that had led to the deprivation of their good-time credits. Id., at 476, 36 L. Ed. 2d 439, 93 S. Ct. 1827. The Court conceded that the language of § 1983 literally covers their claims. See § 1983 (authorizing claims alleging the deprivation of constitutional rights against

1  every "person" acting "under color of" state law). But, the Court noted, the
2  language of the federal habeas statutes applies as well. See 28 U.S.C. §
   2254(a) [28 USCS § 2254(a)] (permitting claims by a person being held "in
3  custody in violation of the Constitution"). Moreover, the Court observed, the
   language of the habeas statute is more specific, and the writ's history makes
4  clear that it traditionally "has been accepted as the specific instrument to obtain
   release from [unlawful] confinement." Preiser, 411 U.S., at 486, 36 L. Ed. 2d
5  439, 93 S. Ct. 1827. Finally, habeas corpus actions require a petitioner fully to
   exhaust state remedies, which § 1983 does not. Id., at 490-491, 36 L. Ed. 2d
6  439, 93 S. Ct. 1827; see also Patsy v. Board of Regents of Fla., 457 U.S. 496,
   507, 73 L. Ed. 2d 172, 102 S. Ct. 2557 (1982). These considerations of linguistic
7  specificity, history, and comity led the Court to find an implicit exception from §
   1983's otherwise broad scope for actions that lie "within the core of habeas
   corpus." Preiser, 411 U.S., at 487, 36 L. Ed. 2d 439, 93 S. Ct. 1827.

8
9  Wilkinson, 544 U.S. at 78-79. The Wilkinson court held that a deprivation of good-time credits

10 falls within the "core of habeas corpus." Id. ("Because an action for restoration of good-time

11 credits in effect demands immediate release or a shorter period of detention, it attacks the very

12 duration of . . . physical confinement, and thus lies at the core of habeas corpus. Therefore,

13 the Court held, the Preiser prisoners could not pursue their claims under § 1983.") (citations

14 omitted).

15     Wilkinson also described how the Court came to the same conclusion in Wolff v.

16 McDonnell, 418 U.S. 539, 554, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (1974). In Wolff, the Court

17 held that the prisoners could not use § 1983 to obtain restoration of credits because Preiser

18 had held that "an injunction restoring good time improperly taken is foreclosed." Wilkinson, 544

19 U.S. at 79, citing Wolff, 418 U.S., at 555. However, the Court described when § 1983 could

20 be used to attack the disciplinary proceeding.

21         "[T]he inmates could use § 1983 to obtain a declaration ("as a predicate
       to" their requested damages award) that the disciplinary procedures were
22     invalid. Ibid. They could also seek "by way of ancillary relief[,] an otherwise
       proper injunction enjoining the prospective enforcement of invalid prison
23     regulations." Ibid. (emphasis added). In neither case would victory for the
       prisoners necessarily have meant immediate release or a shorter period of
24     incarceration; the prisoners attacked only the "wrong procedures, not . . . the
       wrong result (i.e., [the denial of] good-time credits)." Heck, supra, at 483, 129 L.
25     Ed. 2d 383, 114 S. Ct. 2364 (discussing Wolff)."

26 Wilkinson, 544 U.S. at 80.

27     Lastly, the Supreme Court in Wilkinson described its decision in Edwards v. Balisok:

28         Finally, in Edwards v. Balisok, [520 U.S. 641, 648, 137 L. Ed. 2d 906, 117

S. Ct. 1584 (1997)], the Court returned to the prison disciplinary procedure context of the kind it had addressed previously in Preiser and Wolff. Balisok sought "a declaration that the procedures employed by state officials [to deprive him of good-time credits] violated due process, . . . damages for use of the unconstitutional procedures, [and] an injunction to prevent future violations." 520 U.S., at 643, 137 L. Ed. 2d 906, 117 S. Ct. 1584. Applying Heck, the Court found that habeas was the sole vehicle for the inmate's constitutional challenge insofar as the prisoner sought declaratory relief and money damages, because the "principal procedural defect complained of," namely, deceit and bias on the part of the decisionmaker, "would, if established, necessarily imply the invalidity of the deprivation of [Balisok's] good-time credits." 520 U.S., at 646, 137 L. Ed. 2d 906, 117 S. Ct. 1584. Hence, success on the prisoner's claim for money damages (and the accompanying claim for declaratory relief) would "necessarily imply the invalidity of the punishment imposed." Id., at 648, 137 L. Ed. 2d 906, 117 S. Ct. 1584. Nonetheless, the prisoner's claim for an injunction barring future unconstitutional procedures did not fall within habeas' exclusive domain. That is because "[o]rdinarily, a prayer for such prospective relief will not 'necessarily imply' the invalidity of a previous loss of good-time credits." Ibid.

Wilkinson, 544 U.S. at 80-81.

In synthesizing this linage of cases, the Supreme Court found that, "[t]hese cases, taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation)--no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)--if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson, 544 U.S. 81-82.

It appears, based on such precedent, the Supreme Court has determined that habeas corpus holds exclusive jurisdiction to claims that seek to invalidate the result of the disciplinary hearing and resulting credit loss. However, claims that challenge procedural aspects of such a hearing, but not the ultimate determination, need not necessarily proceed by way of habeas corpus. The Supreme Court does not, however, address whether claims that fall out of the "core" of habeas corpus may be brought by way of habeas corpus, § 1983, or both.

### C.   Ninth Circuit Decisions

The Ninth Circuit has also wrestled with issues arising out of the interplay between habeas corpus and § 1983 jurisdiction. Ninth Circuit jurisprudence is expressed in three opinions: Bostic v. Carlson, 884 F.2d 1267 (9th Cir. 1989), Ramirez v. Galaza, 334 F.3d 850 (9th Cir. 2003), and Docken v. Chase, 393 F.3d 1024 (9th Cir. 2004). The Court shall address

each in turn.

        1.     <u>Bostic</u> - <u>Habeas Relief Available Where Expungement "Likely to Accelerate Eligibility" for Parole</u>

In <u>Bostic</u>, the Court of Appeals reviewed district court dismissals of a series of habeas petitions filed by a petitioner who in each was challenging disciplinary actions taken against him. 884 F.2d at 1269. Prison officials had assessed a forfeiture of good-time credits for some of the infractions, but the remainder did not carry a loss of time credits - only a term of segregated housing. <u>Id.</u> at 1269. In each of the petitions, the petitioner sought expungement of the infractions from his disciplinary record. <u>Id.</u> The court "assume[d]" that habeas jurisdictions existed over all the petitions, even those challenging discipline with no attendant credit loss, stating:

> Habeas corpus jurisdiction is available under 28 U.S.C. § 2241 for a prisoner's claim that he has been denied good time credits without due process of law. [citations] Habeas corpus jurisdiction is also available for a prisoner's claims that he has been subjected to greater restriction of his liberty, such as disciplinary segregation, without due process of law. [citations] *Habeas corpus jurisdiction also exists when a petitioner seeks expungement of a disciplinary finding from his record if expungement is likely to accelerate the prisoner's eligibility for parole.* [McCollum v. Miller, 695 F.2d 1044, 1047 (7th Cir. 1982)].

<u>Id.</u> at 1269 (emphasis added). The court did not elaborate on when expungement would be "likely to accelerate" parole eligibility, or otherwise differentiate between parole eligibility and parole suitability.

        2.     <u>Ramirez</u> - <u>Habeas Corpus and § 1983 Relief Are Mutually Exclusive</u>

The Ninth Circuit revisited <u>Bostic</u>'s statements on habeas jurisdiction in <u>Ramirez</u>, 334 F.3d at 858-59. In <u>Ramirez</u>, a prisoner brought a civil rights action under § 1983, not a habeas petition, to challenge procedures used in imposing disciplinary sanctions of ten days of disciplinary detention, 60 days loss of privileges and a referral to administrative segregation. <u>Id.</u> at 852-53. He was <u>not</u> subject to a loss of good time credits. <u>Id.</u> He sought expungement of the disciplinary record from his file and an injunction prohibiting the state from considering it "when they fix plaintiff's terms and decide whether plaintiff should be released on parole." <u>Id.</u> at 859 n. 6.

The district court dismissed the case, finding it barred by <u>Heck v. Humphrey</u>, 512 U.S.

1  477 (1994), reasoning that Ramirez must invalidate the disciplinary sentence before seeking

2  damages under § 1983.[1]

3      The Court of Appeals reversed, holding that the favorable termination rule does not

4  apply to prison disciplinary sanctions that do not necessarily affect the fact or length of a

5  prisoner's confinement. Id. at 854-58. The Ninth Circuit relied on decisions from other circuits

6  involving cases where petitioners challenged disciplinary violations that resulted in

7  administrative segregation, termination of a prison job, or placement in restrictive custody and

8  denial of therapy. Those sanctions were not considered to affect the overall length of the

9  prisoner's confinement, and the claims were allowed to proceed by way of § 1983 actions.

10     In applying the standard, the court rejected the state's argument that the plaintiff's claim

11 that his disciplinary hearing violated due process was "logically inseparable from an attack on

12 the outcome of that hearing, and that a judgment in his favor would necessarily imply the

13 invalidity of his disciplinary conviction." Id. at 859. The state had failed to show that

14 expungement of the disciplinary finding would necessarily accelerate plaintiff's release

15 because the parole board could still deny parole on the basis of other factors. Id. ("As

16 Ramirez's suit does not threaten to advance his parole date, his challenge to his disciplinary

17 hearing is properly brought under § 1983.)

18     In the course of its analysis, the court discussed Bostic in some detail. Specifically, the

19 court found that "Bostic does not hold that habeas jurisdiction is always available to seek the

20 expungement of a prison disciplinary record. Instead, a writ of habeas corpus is proper only

21 where expungement is "likely to accelerate the prisoner's eligibility for parole." Bostic, 884 F.2d

22 at 1269 (emphasis added). Ramirez v. Galaza, 334 F.3d at 858. The court explained that

23

24     [1] The Supreme Court set forth the doctrine known as the "favorable termination rule in Heck v. Humphrey. It held:

25

26     In order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by action whose unlawfulness would render a conviction or sentence invalid, a §
1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal,

27     expunged by executive order, declared invalid by a state tribunal . . . or called into question by a federal court's issuance of a writ of habeas corpus . . . .

28 Ramirez v. Galaza, 334 F.3d 850, 855 (9th Cir. 2003) (citing Heck v. Humphrey, 512 U.S. at 486-67.)

Bostic relied on Seventh Circuit authority that a prisoner could challenge a disciplinary sentence through habeas corpus when it might delay his release on parole. Id. In concluding, the court stated, "Bostic thus holds that the likelihood of the effect on the overall length of the prisoner's sentence from a successful § 1983 action determines the availability of habeas corpus." Id. at 858.

From this, the Ninth Circuit reasoned that § 1983 and habeas corpus were mutually exclusive. Importantly, the Ninth Circuit's discussion in Ramirez was focused on the determination of when § 1983 actions were available in light of the favorable termination rule. The court was not focused on the limits to habeas corpus jurisdiction.

With admirable insight, United States Magistrate Judge Edmond Brennan discussed the reasoning of the Ramirez court in Jackson v. Swarthout, Civ. No. 10-494, 2011 U.S. Dist. LEXIS 97713, 2011 WL 3875859, at *4-6 (E.D. Cal. Aug. 31, 2011), report and recommendation adopted by, 2011 U.S. Dist. LEXIS 110136, 2011 WL 4543192 (E.D. Cal. Sept. 27, 2011), stating:

> From this, the court made the following leap, assuming that the courts' jurisdiction over habeas petitions and their jurisdiction over § 1983 are mutually exclusive: "]H]abeas jurisdiction is absent, and a § 1983 action proper, where a successful challenge to a prison condition will not necessarily shorten the prisoner's sentence." Id. at 859. For ease of discussion, this quote will be referred to herein as the "mutual exclusivity rule." This language has created uncertainty, because challenges to prison conditions that will necessarily shorten the prisoner's sentence fall squarely within the "core" of habeas jurisdiction identified in Preiser, and the Ramirez language indicates that only "core" habeas cases can be brought in federal habeas petitions. It is important to recall that Prieser simply held that "core" cases had to be brought in habeas petitions but did not hold that habeas jurisdiction was limited to such cases. However, Bostic — quoted with apparent approval by the Ramirez panel — squarely found habeas jurisdiction to exist in a non — "core" situation, where success would not necessarily spell earlier release, but was merely likely to accelerate parole-eligibility. Thus, Ramirez's mutual exclusivity rule quoted above appears inconsistent both with the opinion's prior reliance on Bostic for the proposition that "the likelihood of the effect on the overall length of prisoner's sentence from a successful § 1983 action determines the availability of habeas corpus" and with Bostic itself.

3.    Docken - Habeas Corpus and § 1983 Relief Are Not Mutually Exclusive

One year after Ramirez, the court again analyzed habeas and § 1983 jurisdiction in Docken v. Chase, 393 F.3d at 1026-31. In Docken, the petitioner brought a habeas corpus

action to challenge the timing of his parole-eligibility reviews. Id. at 1025-26. The district court

had concluded that the claim could only be brought under § 1983 rather than habeas, because

the plaintiff's success in the case would not "entitle" him to release, just an earlier eligibility

review. Id.

In reversing that conclusion, the Court of Appeals discussed at length U.S. Supreme

Court and Ninth Circuit precedent. First, in summarizing Supreme Court authority, the Court

held that such cases only defined the limitations on § 1983 in light of the exclusive jurisdiction

for certain claims only cognizable in habeas. Specifically, the court stated:

> Thus, although Supreme Court case law makes clear that § 1983 is not available where a prisoner's claim "necessarily" implicates the validity or duration of confinement, it does not set out any mirror-image limitation on habeas jurisdiction. *The Court's central concern, in all of the cases cited above, has been with how far the general remedy provided by § 1983 may go before it intrudes into the more specific realm of habeas, not the other way around.* At the same time, though the Court has so suggested, it has never squarely held that there is an area of overlap between state habeas and § 1983 prisoner suits. Instead, it has policed the distinction between the two remedies solely by defining the limits of § 1983, as in Heck, and by defining those classes of claims that must be brought through habeas, as in Preiser. *Put simply, when the Supreme Court has concerned itself with the interaction between § 1983 and habeas, it has looked in only one direction.*

Docken, 393 F.3d at 1028 (emphasis in original).

Next, the Ninth Circuit explained how in Bostic, the court found certain claims outside

of the "core" habeas claims were still cognizable by way of habeas corpus. Id. at 1028-29. The

court explained:

> Importantly, in speaking of claims only "likely to accelerate" eligibility for parole, Bostic defined a class of suits outside the "core" habeas claims identified in Preiser. Success on the merits in such cases would not "*necessarily*" implicate the fact or duration of confinement. Instead, such claims have, at best, only a *possible* relationship to the duration of a prisoner's confinement, as eligibility for parole is distinct from entitlement to parole.

Id. at 1028-29 (emphasis in original). Accordingly, the court, citing Bostic, acknowledged,

based on its own precedent, that habeas jurisdiction was available in some non "core"

circumstances. See id. ("In [Bostic], for example, we held that 'habeas corpus jurisdiction...

exists when a petitioner seeks expungement of a disciplinary finding from his record if

expungement is likely to accelerate the prisoner's eligibility for parole.'").

The Docken court then described two prior Ninth Circuit decisions, Butterfield v. Bail, 120 F.3d 1023, 1024 (9th Cir. 1997) and Neal v. Shimoda, 131 F.3d 818 (9th Cir. 1997), and attempted to reconcile their seemingly disparate holdings. Docken, 393 F.3d at 1029. In Butterfield, the court held that challenges to the procedures used in denying parole are only cognizable via habeas. Id. However, the court observed that "a change in the procedures governing parole review will not *necessarily* affect the duration of confinement, although it certainly could. Id. (emphasis in original). In Neal v. Shimoda, two prisoners challenged their administrative placement in a treatment program that made them ineligible for parole. The prisoners styled their claims as § 1983 actions against responsible prison officials. The court affirmed the propriety of § 1983 as a successful challenge "will in no way *guarantee* parole or necessarily shorten their prison sentences" and thereby does "not necessarily imply the invalidity of their convictions or continuing confinement" Docken, 393 F.3d at 1029 (citing Neal, 131 F.3d at 824) (emphasis in original).

Based on these cases, the court attempted to reconcile the distinctions between habeas corpus and § 1983 jurisdiction. The court did so by regarding "Neal as holding only that § 1983 was an *appropriate* remedy in that case, without reaching the issue of whether it was the *exclusive* remedy. Certainly, nothing in the Neal opinion suggests that § 1983 was available to the prisoners in Neal *in lieu of habeas*." Id., 393 F.3d at 1030 (emphasis in original).

The court then reviewed case law and determined that only the Seventh Circuit has even implicitly stated that habeas and § 1983 can be mutually exclusive. Id.  Based on decisions of other circuits and the Supreme Court, the court held:

> As outlined above, the question of the relationship between habeas and § 1983 relief has only explicitly come up before in converse form: whether claims are not cognizable under § 1983 because their resolution will necessarily impact the fact and duration of confinement. In the only instance where the Supreme Court addressed whether habeas and § 1983 are necessarily mutually exclusive, the suggestion was that they are not. See Preiser, 411 U.S. at 499; id. at 503-04 (Brennan, J., dissenting). We agree.

Docken, 393 F.3d at 1031 (further stating that the court freed itself from the "erroneous constraints of deciding whether Docken's claim is cognizable via habeas as an either/or

1   proposition."). Finally, in determining that claims which challenged procedures that lengthen

2   the period between parole review were potentially cognizable in habeas, the court should be

3   reluctant to constrain its jurisdiction to hear such claims.  Id. ("Ultimately, though Docken's

4   claim may not be the kind of "core" challenge the Preiser Court had in mind, the potential

5   relationship between his claim and the duration of his confinement is undeniable. In such a

6   case, we are reluctant to unnecessarily constrain our jurisdiction to entertain habeas petitions

7   absent clear indicia of congressional intent to do so." (citing INS v. St. Cyr, 533 U.S. 289, 150

8   L. Ed. 2d 347, 121 S. Ct. 2271 (2001); Flores-Miramontes v. INS, 212 F.3d 1133 (9th Cir.

9   2000)).

10          **D.     Subsequent District Court Approaches Diverge**

11          Despite the Ninth Circuit's attempt to clarify the distinction between habeas corpus and

12   § 1983 jurisdiction, significant confusion remains. As explained by Judge Bommer in Saif'ullah

13   v. Haviland, 2011 U.S. Dist. LEXIS 126249 (E.D. Cal. Oct. 31, 2011):

15          [D]istrict courts have taken divergent views on whether a claim such as
     the one that Petitioner raises ... is cognizable in federal habeas proceedings.
16   Compare, Allen v. Swarthout, Civ. No. 10-3257, 2011 WL 2075713, at *3 (E.D.
     Cal. May 23, 2011) (finding habeas jurisdiction where petitioner demonstrated
17   that it was "at least 'likely' that expungement of the disciplinary finding could
     accelerate his eligibility for parole"); report and recommendation adopted by,
18   2011 WL 2680756 (E.D. Cal. July 8, 2011); Hardney v. Carey, Civ. No. 06-300,
     2011 WL 1302147, at *8 (E.D. Cal. Mar. 31, 2011) (same); Drake v. Felker, Civ.
19   No. 07-577, 2007 WL 4404432, at *2 (E.D. Cal. Dec. 13, 2007) ("The Court finds
     that Petitioner's application is cognizable under 28 U.S.C. § 2254 to the extent
20   it raises concern that the disciplinary finding will one day affect Petitioner's
     eligibility for parole."); with Norman v. Salazar, Civ. No. 08-8532, 2010 WL
21   2197541, at *2 (C.D. Cal. Jan. 26, 2010) ("The mere possibility that the 2006
     disciplinary conviction could be detrimental to Petitioner in future parole hearings
22   is too speculative to serve as the basis for a habeas corpus petition."), report
     and recommendation adopted by, 2010 WL 2197542 (C.D. Cal. May 26, 2010).
23   Judge Hollows, citing to relevant authority, recently determined that the majority
     of courts considering this issue have found habeas jurisdiction to exist. Bailey
24   v. Swarthout, Civ. No. 10-2454, 2011 WL 4056051, at *4 (E.D. Cal. Sept. 12,
     2011) [*45] (citing Morris v. Haviland, Civ. No. 10-897, 2011 WL 3875708 (E.D.
25   Cal. Sept. 1, 2011); Allen, 2011 WL 2075713, Hardney, 2011 WL 1302147,
     Johnson v. Swarthout, Civ. No. 10-1568, 2011 WL 1585859 (E.D. Cal. Apr. 22,
26   2011); Foster v. Washington-Adduci, Civ. No. 09-7987, 2010 WL 1734916 (C.D.
     Cal. Mar. 24, 2010), report and recommendation adopted by, 2010 WL 1734915
27   (C.D. Cal. Apr. 27, 2010); Murphy v. Dep't of Corrs. & Rehabilitation, Civ. No.
     06-4956, 2008 WL 111226 (N.D. Cal. Jan. 9, 2008); Drake, 2007 WL 4404432).

28          "Thus, there is a split even within the Eastern District of California regarding whether

1    habeas jurisdiction exists" over claims of the exact same nature as Petitioner's." Saif'ullah,

2    2011 U.S. Dist. LEXIS 126249 at *32-53.

3        **E.    This Court's Conclusion: Habeas Corpus  Jurisdiction Extends to  Non-
         Core Claims Likely to Accelerate Eligibility for Parole**

4

5            1.      Distinguishing Between Habeas and § 1983 Relief Problematic

6        Thus, as can be seen, the distinction and interplay between the jurisdictional limits of

7    habeas and civil rights is muddled, at best. It is clear that certain actions, such as challenges

8    to a petitioner's conditions of confinement not affecting the fact or duration of such

9    confinement are only cognizable by way of a civil rights action. Conversely, certain "core"

10   habeas challenges, such as a challenge involving the underlying conviction, may only proceed

11   by way of a habeas corpus petition.

12       When a petitioner's claim may, but does not necessarily, affect the duration of

13   confinement, problems arise. Some judges have distinguished  Docken so as to  limit the

14   scope of cases found cognizable in habeas. See Willis v. Grounds, Civ. No. 10-642, 2011 U.S.

15   Dist. LEXIS 127714 (E.D. Cal. Sept. 30, 2011) (holding that the standard from Docken that

16   habeas jurisdiction exists if it could potentially affect the duration of confinement only applied

17   to challenges to aspects of his parole review and not challenges to disciplinary proceedings.)

18   However, this Court is disinclined to read Docken, the most recent decision of the Ninth Circuit

19   on the issue and the most comprehensive in addressing the issue, so narrowly.

20       The Ninth Circuit in Docken rather directly reaffirmed its view that habeas corpus

21   jurisdiction is available for claims "'likely to accelerate' eligibility for parole, ...a class of suits

22   outside the 'core' habeas claims identified in Preiser." Docken, 393 F.3d at 1028. Specifically

23   the court stated:

24           Our own precedents have more directly addressed the interplay between
         § 1983 and habeas in the parole context and are somewhat illuminating with
25       regard to the reach of habeas jurisdiction over parole-related prisoner suits. In
         Bostic v. Carlson, 884 F.2d 1267 (9th Cir. 1989), for example, we held that
26       "habeas corpus jurisdiction . . . exists when a petitioner seeks expungement of
         a disciplinary finding from his record if expungement is likely to accelerate the
27       prisoner's eligibility for parole." Id. at 1269 (citing McCollum v. Miller, 695 F.2d
         1044, 1047 (7th Cir. 1983)) (emphasis added). As we recently explained, "Bostic
28       thus holds that the likelihood of the effect on the overall length of the prisoner's
         sentence . . . determines the availability of habeas corpus." Ramirez v. Galaza,

334 F.3d 850, 858 (9th Cir. 2003) (emphasis added), cert. denied, 541 U.S. 1063, 158 L. Ed. 2d 963, 124 S. Ct. 2388 (2004).

Importantly, in speaking of claims only "likely to accelerate" eligibility for parole, Bostic defined a class of suits outside the "core" habeas claims identified in Preiser. Success on the merits in such cases would not "necessarily" implicate the fact or duration of confinement. Instead, such claims have, at best, only a possible relationship to the duration of a prisoner's confinement, as eligibility for parole is distinct from entitlement to parole.

Docken, 393 F.3d at 1028-1029.

### 2.      Habeas Corpus and § 1983 Are Not Mutually Exclusive

While such claims may be cognizable by way of habeas corpus, the fact that they do not necessarily shorten the prisoner's sentence makes them potentially cognizable in a § 1983 action as well. In realizing the potential overlap, the Ninth Circuit acknowledged that habeas and § 1983 may not necessarily be mutually exclusive.

Additionally, discussions regarding cognizability of claims typically have arisen only in the context of claims not cognizable by way of § 1983. Docken, 393 F.3d at 1028 ("Thus, although Supreme Court case law makes clear that § 1983 is not available where a prisoner's claim 'necessarily' implicates the validity or duration of confinement, it does not set out any mirror-image limitation on habeas jurisdiction. The Court's central concern, in all of the cases cited above, has been with how far the general remedy provided by § 1983 may go before it intrudes into the more specific realm of habeas, not the other way around."); see also Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) ("These cases, taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation)--no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)--if success in that action would necessarily demonstrate the invalidity of confinement or its duration.") As habeas corpus and § 1983 jurisdiction is not mutually exclusive, limitations on § 1983 jurisdiction are not necessarily an indication of inverse limitations on habeas jurisdiction.

The Sixth Circuit found that habeas and § 1983 are not mutually exclusive. In Terrell v. United States, 564 F.3d 442 (6th Cir. 2009), a federal prisoner brought a habeas petition challenging the Federal Parole Commission's use of videoconferencing to conduct parole

determination proceedings. Id. at 443. Before determining the merits of the petition, the court throughly examined whether it had jurisdiction to entertain it, where Petitioner did not contend that remedying the violation "will necessarily entitle him to an earlier release from custody." Id. at 445. After describing relevant Ninth Circuit authority, including Docken, allowing for actions to proceed by way of either habeas corpus or § 1983, and Seventh Circuit authority finding mutual exclusivity (See  Richmond v. Scibana, 387 F.3d 602, 605-606 (7th Cir. 2004)), the Sixth Circuit concluded  that the actions are not mutually exclusive. Terrell, 564 F.3d at 448. In so deciding, the Sixth Circuit relied on the Supreme Court decision Wilkinson v. Dotson. 544 U.S. 74, 82 (2005). The majority of the Supreme Court there held that "challenges to parole procedures that would not 'necessarily spell speedier release' and claimed 'future relief (which, if successful, [would] not necessarily imply the invalidity of confinement or shorten its duration)' were 'yet more distant' from the 'core' of habeas within which habeas is the exclusive available action" and "[t]herefore, the challenge could be brought under § 1983." Terrell, 564 F.3d at 448 (citing Wilkinson, 544 U.S. 82.). Noting that "[t]he majority left open the question we have here of whether the procedural challenge could be brought under both § 1983 and habeas," the Sixth Circuit concluded  that habeas and 1983 jurisdiction overlap. Id.

Acknowledging that claims which may, but do not necessarily, impact the duration of a petitioner's sentence "may not be the kind of 'core' challenge the Preiser Court had in mind," the Ninth Circuit noted that the "potential relationship between [the] claim and the duration of... confinement is undeniable." Docken, 393 F.3d at 1031. In such an instance the Ninth Circuit was "reluctant to unnecessarily constrain [its] jurisdiction to entertain habeas petitions absent clear indicia of congressional intent to do so." Docken, 393 F.3d at 1031 (citing INS v. St. Cyr, 533 U.S. 289, 150 L. Ed. 2d 347, 121 S. Ct. 2271 (2001) and Flores-Miramontes v. INS, 212 F.3d 1133 (9th Cir. 2000)).

Relevant Ninth Circuit authority satisfies this Court that there is no precedent  explicitly precluding habeas corpus jurisdiction for non "core" habeas proceedings. To the extent a petitioner's claims do not necessarily affect the duration of his confinement, the claims may also be brought by way of § 1983.  Moreover, since  the Ninth Circuit has never expressly held

1   that habeas and § 1983 claims are mutually exclusive, this Court need not be concerned with

2   the possibility that the matters may be considered on alternate statutory grounds. Finally, the

3   Court should be reluctant to unnecessarily constrain its jurisdiction to entertain habeas

4   petitions absent clear indicia of congressional intent to do so. See INS v. St. Cyr, 533 U.S. 289

5   (2001).

6                        3.  Concerns Regarding Uniformity of Habeas Claims

7           It is clear from the discussion above that courts have struggled to delineate the

8   distinction between habeas corpus and § 1983 jurisdiction, let alone apply the distinction in

9   a consistent manner. State and federal prisoners, filing pro se petitions, will inevitably fail to

10  negotiate this legally constructed gauntlet unless clear distinctions are made and consistently

11  applied.

12          First and foremost, the Court finds it troubling that a due process claim concerning a

13  disciplinary violation with attendant credit loss could transmute from a cognizable habeas

14  corpus claim to a  § 1983 action should the impact of the violation become too speculative to

15  increase the duration of confinement. The fact is that the claim implicates constitutionally

16  protected due process concerns and should be able to proceed by way of a habeas corpus

17  petition, a  § 1983 action, or possibly both. To consider habeas corpus and  § 1983 actions

18  as mutually exclusive creates the possibility that similar claims could be rejected as neither

19  cognizable in habeas corpus nor  § 1983, leaving a petitioner no vehicle with which to attempt

20  to obtain relief.

21          For example, the Court described, above, how some district courts in California have

22  found that disciplinary proceedings resulting in credit loss will not affect the duration of a

23  petitioner serving an indeterminate term and are not cognizable in habeas. Conversely, the

24  court in Bonner v. Roszco, 2011 U.S. Dist. LEXIS 131718 (E.D. Cal. Nov. 14, 2011), dismissed

25  just such a claim filed in a § 1983 action for lack of jurisdiction, and ordered the petitioner to

26  file a habeas corpus petition to seek relief on the claim. Such results cannot be reconciled.

27  This Court would find that any time a credit loss occurs, implicating a state-created liberty

28

interest, a challenge could properly proceed by way of habeas corpus.[2] "This Court has found no case holding that habeas corpus jurisdiction is absent where a Petitioner seeks to invalidate a forfeiture of good time credits. Indeed, in the only Ninth Circuit case to mention the possibility that restoration of good time credits would not reduce a prisoner's sentence, the court instructed the district court on remand to consider whether restoration of the credits could result in a speedier release, and if not, 'habeas would no longer be his *exclusive* federal remedy.'" Escamilla v. Giurbino, 2006 U.S. Dist. LEXIS 80282 (S.D. Cal. Nov. 2, 2006) (citing Young v. Kenny, 907 F.2d 874, 878 n.3 (9th Cir. 1990)) (emphasis in original).

## F.   Petitioner's Claims

Application of these principals and this Court's conclusion to the instant case produces the following analysis:

### 1.   Effect of Good Time Credit Loss on the Duration of Petitioner's Sentence

Respondent asserts that the loss of credits from Petitioner's disciplinary violation only affects Petitioner's Minimum Eligible Parole Date ("MEPD") which has already passed. (See Obj., ECF No. 27. "The fact or duration of Avina's confinement was not affected because Avina is serving an indeterminate life sentence and his minimum eligible parole date has already passed.") Assuming that the credits only affect his MEPD and not future parole consideration hearings, Respondent argues that Petitioner cannot show that a successful challenge will alter the duration of his confinement.

Determining the application of credits to life sentences in California is a complex undertaking. First, Respondent asserts that "[t]he credits that inmates earn... and may forfeit... are applicable only to determinate sentences." (Mot. to Dismiss at 4.) This is not entirely true. The relevant California Code of Regulations states that the Board of Parole Hearings ("Board") determines the amount of post-conviction credit that a prisoner serving a life sentence may earn. Cal. Code Regs. tit. 15, § 2400.

Next, Respondent asserts that Petitioner's release is at the discretion of the Board, and

---

[2]As determined by the Supreme Court in Wilkinson, claims concerning credit losses are 'core' habeas claims and may necessarily only be cognizable in habeas, and not § 1983. Wilkinson, 544 U.S. at 78-79.

therefore statutory credits cannot influence his release date. This claim is also incorrect. A life prisoner is first eligible for a parole hearing one year before the MEPD. Cal. Penal Code § 3041(a). After finding an inmate suitable for parole, the Board uses guidelines established in its regulations to calculate the inmate's parole release date. In re Dannenberg, 34 Cal. 4th 1061, 1080 (2005) ("[T]he suitability determination precedes any effort to calculate a parole release date."). Good time and work time credits are then included in this calculation. See Cal. Code Regs. tit. 15, § 2410 (explaining the calculation of post-conviction credit). Several California courts have described parole calculations for life prisoners that involve calculating the post-conviction credits the prisoner earned. See, e.g., In re Lowe, 130 Cal. App. 4th 1405, 1413-1414 (Cal. App. 2005) ("The Board proceeded to determine [petitioner's] parole date... [Petitioner] was given 56 months of credit against this term, reducing it to 196 months total period of confinement (16 years and 4 months) beginning in August 1985. (Cal. Code Regs. tit. 15, § 2410 [Four months of credit for each year served, minus two years for the two disciplinaries in prison].)"); In re Smith, 150 Cal. App. 4th 451, 455-456 (Cal. App. 6th Dist. 2007) (Petitioner was provided 79 months "of post-conviction credits, evidently for good conduct" in determining his parole date.) (Superseded on other grounds by grant of rehearing); People v. Barella, 57 Cal. App. 4th 1369, 1376-1377 (Cal. App. 1997) ("Under the regulations, the actual post-conviction credit received by a defendant is contingent on many factors, including the defendant's conduct, performance in work assignments, and participation in rehabilitative programs.") (Superseded on other grounds by grant of rehearing). Because the calculations include the application of post-conviction credits, they logically were directly influenced by disciplinary violations which reduce such credits. See In re Smith, 150 Cal. App. 4th at 456.

Respondent concedes that the Board's calculation of a release date includes the application of post-conviction credit. (Mot. to Dismiss at 5.) However, Respondent asserts that the parole decision rests on a myriad of factors so that the claim that the disciplinary violation affects the proceeding is too attenuated. Respondent improperly interrelates the factors regarding the grant of parole with the factors relating to calculating a parole date. (The

effect of Petitioner's disciplinary violation on his parole decision, as opposed to the calculation

of his parole release date, is discussed in the next section.)

Other federal courts have similarly found that disciplinary actions potentially affect

duration of confinement. For example, Judge Singleton explained:

> Respondent appears to argue that an inmate's good time credits are only used to determine a life prisoner's Minimum Eligibility for Parole Date ("MEPD"), which is adjusted through the credit earnings and losses. Respondent contends that, because [Petitioner]'s MEPD has long since passed, his actual term of incarceration will be determined by the Board of Parole Hearings. Therefore, according to Respondent, the loss of his good time credits in 2008 could not affect the duration of his confinement. That analysis begs the question: if the loss of his good time credits will not affect the duration of [Petitioner]'s confinement, what was the purpose in assessing the loss as a penalty? Because "time" only refers to duration of confinement, by no stretch of the imagination can the loss of good time credits be classified as a "condition" of confinement. ... Respondent's argument is further undercut by the fact that post-conviction credits earned for each year in prison may be affected by disciplinary actions, which impacts an inmate's actual release date once the Board finds the inmate suitable for parole. Thus, this Court cannot say that the disciplinary action in this case does not affect the duration of imprisonment.

Hoover v. Haviland, 2011 U.S. Dist. LEXIS 95954, 13-15 (E.D. Cal. Aug. 26, 2011).

As with other determinations discussed herein, other district courts have differed and

found that the loss of credits cannot affect the duration of a petitioner's confinement. See e.g.,

Calderon-Silva v. Uribe, 2010 U.S. Dist. LEXIS 138292, 2010 WL 5392895, at *2 (C.D. Cal.

Aug. 31, 2010) ("Accordingly, the punishment that resulted from the allegedly unconstitutional

disciplinary proceedings has no bearing upon the fact or duration of petitioner's confinement

because  his term of life in prison was not extended and his minimum term of imprisonment

was not shortened by the loss of time credits."); Willis v. Grounds, 2011 U.S. Dist. LEXIS

127714 (E.D. Cal. Sept. 30, 2011) ("Thus, his good-time credits are meaningless to an extent

because the credits can no longer reduce his minimum eligible parole date.").

This Court agrees with the analysis and conclusion reached by Judge Singleton - the

loss of credits may affect Petitioner's sentence. California regulations state that credits are to

be used in calculating a release date, and California case law confirms such a practice. Since

the loss of credits will be used to determine the date of Petitioner's release, it affects the

duration of his sentence and creates a proper basis for habeas corpus jurisdiction.

Respondent asserts in the motion to dismiss that Petitioner's claim is not cognizable because it does not affect the duration of confinement. As discussed above, the calculation of Petitioner's parole date, once he is granted parole, involves a factually complex and detailed analysis. Ultimately, Respondent has not shown as a matter of law that the disciplinary violation cannot affect the calculation of Petitioner's parole date. Petitioner's claim *may* affect the duration of his confinement.

Since Petitioner has not been granted parole, it would be speculative to say whether the loss of good time credits will increase the term of his confinement. Some courts have found that they lack jurisdiction to adjudicate such claims or, alternatively, that such claims are not ripe because of that speculative nature. See Stewart v. Singh, 2011 U.S. Dist. LEXIS 76426 at *27-28 (E.D. Cal. July 14, 2011). This Court concludes to the contrary on several grounds. First, Respondent has not presented an argument based on ripeness or other Article III limitations in his motion to dismiss, and may not now be present one. Further, there is no legal authority that claims regarding the duration of confinement lose cognizability in habeas because intervening events leave their application speculative. Article III limitations and habeas corpus jurisdiction are separate and distinct inquiries. Complications would arise if adjudication of these claims were delayed until they became less speculative. The Court and the litigants would be disadvantaged by the passage of time if due process violations relating to disciplinary violations were litigated only after Petitioner was granted parole and his release date calculated. Statute of limitations complications would arise; would tolling allow such claims to remain open until the actual effect of loss of good credit time could be shown? It is noted, further, that in Stewart the claims were found too speculative because the petitioner had not yet had a parole suitability hearing which could have been affected by the disciplinary proceeding. Here, Petitioner attached records of his parole suitability hearing which clearly demonstrate that the Board clearly and measurably did rely in fact on the disciplinary action in denying parole.

In summary, the Court finds that Petitioner's loss of credits as a result of the disciplinary hearing may be considered in calculating Petitioner's release date. His loss of credits therefore

1    affects the duration of his sentence. Consequently, habeas corpus jurisdiction is proper.

2              2.     Effect of Good Time Credit Loss on Parole

3    Respondent relies on Sandin v. Conner, 515 U.S. 472, 487 (1995) as authority for the

4    proposition that a prison misconduct finding has too attenuated an effect on the decision to

5    release a prisoner to invoke the protections of the Due Process Clause. Id. In Sandin, the

6    Petitioner was placed in administrative segregation because of misconduct. Id. at 475-76. In

7    determining petitioner was not entitled to certain due process considerations, the Supreme

8    Court reaffirmed its holding in Wolff v. McDonnell, 418 U.S. 539, 553 (1974) that the loss of

9    good time credits implicates liberty interests that require minimum due process considerations.

10   Sandin, 515 U.S. at 477-478.

11   Respondent's reliance on Sandin is misplaced. In Sandin, an inmate was found guilty

12   of prison misconduct for using abusive language and harassing employees. Sandin, 515 U.S.

13   at 475. He was assessed with disciplinary segregation but received no loss of good time credit.

14   Id. at 476-77. The Supreme Court held that a liberty interest arises under state law when an

15   inmate is subjected to restrictions that impose "atypical and significant hardship on the inmate

16   in relation to the ordinary incidents of prison life." Id. at 484. The Court found that in Sandin's

17   case, placement in segregated confinement for misconduct was not a sufficiently atypical and

18   significant hardship as to create a liberty interest as there was little difference compared to the

19   conditions he was already subject to in administrative segregation and protective custody. Id.

20   at 486.   Furthermore, the Supreme Court concluded that the prison misconduct did not

21   inevitably affect the duration of confinement. Id. at 487. It reasoned that "[t]he chance that a

22   finding of misconduct will alter the balance [of a parole suitability hearing] is simply too

23   attenuated to invoke the procedural guarantees of the Due Process Clause." Id.

24   Here, however, Petitioner's prison misconduct finding caused a loss of good time

25   credits. A state-created right to good-time credits which might enable a prisoner to be released

26   early is a constitutionally protected liberty interest. Wolff v. McDonnell, 418 U.S. at 556-57; see

27   also In re Rothwell, 164 Cal. App. 4th 160, 165, 78 Cal. Rptr. 3d 723 (2008) (noting that,

28   although Wolff does not create a stand-alone liberty interest in good time credits, the State of

1   California has created such an interest by statute). Based on Petitioner's liberty interest in

2   good time credits, Petitioner is entitled to "those minimal procedures appropriate under the

3   circumstances and required by the Due Process Clause to insure that the state-created right

4   is not arbitrarily abrogated." Wolff, 418 U.S. at 557.

5       Respondent does not contest that the State of California has created a liberty interest

6   in good time credits under Wolff,  that Petitioner was assessed a ninety day loss of good time

7   credits, and that based on the loss of a state created liberty interest in good time credits,

8   Petitioner is entitled to due process protections afforded under Wolff and Hill. Respondent

9   argues, however, that the consequences of Petitioner's disciplinary violation do not constitute

10  such an "atypical and significant hardship on the inmate in relation to the ordinary incidents

11  of prison life" or so "invariably affect the duration of his sentence" as to invoke his liberty

12  interest. See Sandin, 515 U.S. at 484-87.

13      Respondent's argument is fundamentally flawed. Petitioner has a liberty interest,

14  created by state law,  in good time credits and is therefore entitled to due process protections

15  without showing that he was subject to "atypical and significant hardship" or that the conduct

16  "invariably affect[s] the duration of his sentence." Id. Petitioner need not show that the

17  disciplinary violation and resulting credit loss would affect his parole consideration as he is

18  already entitled to due process protections based on the loss of good credit time.

19          3.    Effect of the Disciplinary Report on Petitioner's Parole Suitability Hearing

20      Pursuant to California Code of Regulations § 2402(a), the Board is required to

21  determine petitioner's suitability for parole by considering: his "involvement in other criminal

22  misconduct which is reliably documented;" his "behavior before, during, and after the crime;"

23  and whether he "has engaged in serious misconduct in prison or jail." Cal. Code Regs. tit. 15,

24  § 2402(b), (c)(6) (2010). Institutional behavior is given additional consideration because

25  "[i]nstitutional activities indicate an enhanced ability to function within the law upon release."

26  Id. § 2402(d)(9). Therefore, the Board is required to consider petitioner's prison disciplinary

27  record in determining his suitability for parole.

28      As noted, Respondent argues habeas jurisdiction is lacking because petitioner's

challenge will not necessarily shorten petitioner's sentence. This argument is unpersuasive. Reversal or expungement of petitioner's conviction for the rules violation, if warranted, is both "likely" to accelerate his eligibility for parole, Bostic, 884 F.2d at 1269, and "could potentially affect the duration of [his] confinement." Docken, 393 F.3d at 1031. See, e.g., Rodarte v. Grounds, C 10-4517 RMW (PR), 2011 U.S. Dist. LEXIS 68011 at *5-13 (N.D. Cal. June 24, 2011) (Holding that expungement of disciplinary conviction is cognizable in habeas corpus because it is likely to accelerate petitioner's eligibility for parole and/or could potentially affect the duration of his confinement.); Johnson v. Swarthout, S-10-1568 KJM DAD, 2011 U.S. Dist. LEXIS 43798, 2011 WL 1585859 at *2-3 (E.D. Cal. Apr. 22, 2011) (Findings and recommendations recommending that habeas jurisdiction exists for a challenge to a disciplinary decision, but no decision yet from the district judge); Hardney v. Carey, S-06-0300 LKK EFB, 2011 U.S. Dist. LEXIS 35603, 2011 WL 1302147 at *5-8 (E.D. Cal. Mar. 31, 2011) (same); Foster v. Washington-Adduci, 2010 U.S. Dist. LEXIS 41578, 2010 WL 1734916 at *4 (C.D. Cal. Mar. 24, 2011) (Respondent's reliance on dictum from Ramirez was not persuasive in case brought under § 2241 in the federal prison context ); Murphy v. Dep't of Corr. & Rehabilitation, 2008 U.S. Dist. LEXIS 1691, 2008 WL 111226 at *7 (N.D. Cal. Jan. 9, 2008) (habeas corpus jurisdiction is proper to challenge a disciplinary guilty finding because "[a]s a matter of law, it is well established that a disciplinary violation may affect the duration of an inmate's confinement."); Drake v. Felker, S-07-0577 JKS, 2007 U.S. Dist. LEXIS 91585, 2007 WL 4404432 at *2 (E.D. Cal. Dec. 13, 2007) (Habeas corpus jurisdiction found to exist over a challenge to a disciplinary decision because "a negative disciplinary finding, at least in California, necessarily affects potential eligibility for parole").

This Court recognizes that some district courts have held to the contrary. See, e.g. Rhodes v. Evans, S-09-1842 JAM EFB, Docket Nos. 18, 20, 2011 U.S. Dist. LEXIS 12916 (E.D. Cal. Apr. 9, 2011) (District judge held that challenge to disciplinary decision was not cognizable on habeas review, rejecting magistrates judge's recommendation); Legare v. Ochoa, S-10-2379 AWI, 2011 U.S. Dist. LEXIS 20382, 2011 WL 795811 at *1 (E.D. Cal. Mar. 1, 2011) (Findings and recommendations recommending that habeas jurisdiction does not

exist for a challenge to a disciplinary decision, but no decision yet from the district judge); Norman v. Salazar, 2010 U.S. Dist. LEXIS 52280, 2010 WL 2197541 at *2 (C.D. Cal. Jan. 26, 2010) ("the mere possibility that the 2006 disciplinary conviction could be detrimental to Petitioner in future parole hearings is too speculative to serve as the basis for a habeas corpus petition"); Santibanez v. Marshall, 2009 U.S. Dist. LEXIS 131033, 2009 WL 1873044 at *7 (C.D. Cal. June 30, 2009) (claim seeking expungement of disciplinary conviction not cognizable on habeas review because it would have only speculative impact on the petitioner's consideration for parole in the future).

In this case, Petitioner denies the charges underlying the disciplinary violation. It is therefore possible that expungement of the violation from his record would improve his parole prospects to the extent that the violation, and the conduct underlying it, would no longer be considered by the Board or by petitioner's evaluating psychologists. At Petitioner's last parole hearing, the commissioner specifically referred to the violation as a reason for parole unsuitability.

> A factor of unsuitability would be his serious misconduct while incarcerated. Mr. Avina has atrocious conduct while incarcerated. He has eight 115s. Six of those 115s are for violent acts. His most recent 115 in 9 of 2008 was for fighting. He has 115s for mutual combat, and clearly has not avoided himself of violence while incarcerated, as evidenced by his most recent 115.

(Mot. to Dismiss, Ex. 1 at 99-100.)

Further,

> Thank you, and in summarizing the institutional adjustment, Mr. Avina has programmed in a limited manner. He continues to display negative behavior while incarcerated. As a result, he has been placed in special housing, which is known as AD Seg, which has limited his ability to demonstrate parole readiness. His disciplinary record is extensive while in prison. He has a pattern of not following the rules. Most recently had a 115 in 2008 for violence which makes the Panel concerned that he will have a difficult time following the conditions of parole.

(Id. at 101.)

Based on various unsuitably factors, including the violation he is presently challenging, Petitioner received a ten year parole denial. (Id. at 106.) Petitioner challenges the violation and the underlying conduct which formed the basis of the violation.

Based on the record in the instant case, the undersigned finds that Petitioner has stated a federal claim. The disciplinary finding for fighting is "criminal misconduct which is reliably documented." Cal. Code Regs. tit. 15 § 2402(b). The Board is required to consider the violation because it reflects on petitioner's behavior "after the crime." Id. The Board explicitly relied on petitioner's disciplinary findings as one of many reasons in denying him parole. Thus, it is at least 'likely' that expungement of the disciplinary finding could accelerate petitioner's eligibility for parole. Bostic, 884 F.2d at 1269.

## IV.   CONCLUSION

The Court finds that Respondent has not put forward a sufficient basis to show that Petitioner may not present his claim by way of a habeas corpus petition. Petitioner has presented challenges to a prison disciplinary proceeding in  which he was assessed a loss of good credit time. Alternatively, it is likely that the expungement of disciplinary finding could potentially affect the duration of [his] confinement. The Court hereby finds that the claim is cognizable by way of a petition for writ of habeas corpus and that Petitioner has properly alleged claims in violation of his due process rights. Accordingly, Petitioner's claim is found to be cognizable, and the Court again recommends that the motion to dismiss be denied and Respondent be required to file an answer addressing the merits of the petition.

## V.   RECOMMENDATION

Accordingly, the Court RECOMMENDS that the motion to dismiss for failure to state a cognizable claim be DENIED.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after the date of service of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties.  Such a document should  be  captioned  "Objections  to  Magistrate  Judge's  Findings  and Recommendation."  Replies to the Objections shall be served and filed within fourteen (14) days after service of the Objections. The Finding and Recommendation will then be submitted

U.S. District Court
E. D. California

to the District Court for review of the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636

(b)(1)(c).  The parties are advised that failure to file objections within the specified time may

waive the right to appeal the Order of the District Court.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th

Cir. 1991).


IT IS SO ORDERED.

Dated:    December 23, 2011          /s/ *Michael J. Seng*

UNITED STATES MAGISTRATE JUDGE