1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16

| | |
|---|---|
| JOSE AVINA,<br><br>                    Petitioner,<br><br>        v.<br><br>DARREL G. ADAMS, Warden,<br><br>                    Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

1:10-cv-00790-AWI-MJS

FINDINGS AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS

17  Petitioner is a state prisoner proceeding with a petition for writ of habeas corpus

18  pursuant to 28 U.S.C. § 2254. He is represented by counsel, Robert Navarro. The parties have

19  not consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c). (ECF No. 5, 14.)

20  **I.      PROCEDURAL BACKGROUND**

21  Petitioner is currently in the custody of the California Department of Corrections

22  pursuant to a judgment of the Superior Court of California, County of San Francisco, following

23  his conviction by jury trial on October 31, 1995, of second degree murder with a

24  deadly-weapon. (Answer, ECF No. 43, p. 3.) Petitioner was given an indeterminate sentence

25  of sixteen years to life. (Id.)

26  On September 22, 2008, Nurse Gray was conducting her medical rounds when she

27  noticed bruising on the face of Inmate Ramirez who was Petitioner's cellmate. Both Petitioner

28  and Inmate Ramirez were pulled from the cell for medical examination. Both inmates had

1    injuries prison staff deemed to be consistent with having been in a physical altercation.

2    Petitioner was charged with fighting. He received a copy of the rules violation report on

3    September 25, 2008. (Answer, Ex. 7.) Petitioner's disciplinary hearing was held on October

4    2, 2008, where he was found guilty of fighting. (Id.)

5        On March 24, 2009, Petitioner filed a habeas petition challenging the disciplinary action

6    in the Superior Court of California, County of Kings, which was denied on August 20, 2009.

7    (Answer, Ex. 2.) On October 2, 2009, Petitioner filed a writ of habeas corpus with the

8    California Court of Appeal, Fifth Appellate District, which was summarily denied on January

9    6, 2010. (Answer, Ex. 4.)  Petitioner filed a habeas petition in the California Supreme Court

10   on February 8, 2010 which was summarily denied on May 5, 2010. (Answer, Exs. 5, 6.)

11       Petitioner then filed the present federal habeas petition on August 26, 2010. Petitioner

12   raises claims for relief based on lack of some evidence establishing his guilt, denial of his due

13   process rights to present witnesses, be assisted by a competent investigative employee,

14   receive documents at least twenty-four hours prior to disciplinary hearing, and right to have

15   an adequate hearing. (2nd Am. Pet. ECF No. 10.)

16       Respondent filed an answer to the petition on April 12, 2012, and Petitioner filed a

17   traverse on June 7, 2012. (Answer & Traverse, ECF Nos. 43, 48.)

18   **II.    DISCUSSION**

19       **A.    Jurisdiction**

20       Relief by way of a petition for writ of habeas corpus extends to a person in custody

21   pursuant to the judgment of a state court if the custody is in violation of the Constitution or

22   laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams

23   v. Taylor, 529 U.S. 362, 375 fn.7 (2000).  Petitioner asserts that he suffered a violation of his

24   right to due process as guaranteed by the U.S. Constitution.  In addition, Petitioner was

25   confined in Kings County at the time of filing, which is located within the jurisdiction of this

26   court. 28 U.S.C. § 2241(d); 2254(a). Accordingly, the Court has jurisdiction over the action.

27       **B.    Legal Standard of Review**

28       On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

U.S. District Court
E. D. California

of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Under AEDPA, an application for a writ of habeas corpus by a person in custody under a judgment of a state court may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); Williams v. Taylor, 529 U.S. at 375 n. 7 (2000). Federal habeas corpus relief is available for any claim decided on the merits in state court proceedings if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

### 1. Contrary to or an Unreasonable Application of Federal Law

A state court decision is "contrary to" federal law if it "applies a rule that contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from" a Supreme Court case, yet reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405 06). "AEDPA does not require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied. . . . The statue recognizes . . . that even a general standard may be applied in an unreasonable manner" Panetti v. Quarterman, 551 U.S. 930, 953 (2007) (citations and quotation marks omitted). The "clearly established Federal law" requirement "does not demand more than a 'principle' or 'general standard.'" Musladin v. Lamarque, 555 F.3d 830, 839 (2009). For a state decision to be an unreasonable application of clearly established federal law under § 2254(d)(1), the Supreme Court's prior decisions must provide a governing legal principle (or principles) to the issue before the state court.

1   Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003).   A state court decision will involve an

2   "unreasonable application of "federal law only if it is "objectively unreasonable." Id. at 75-76

3   (quoting Williams, 529 U.S. at 409 10); Woodford v. Visciotti, 537 U.S. 19, 24 25 (2002). In

4   Harrington v. Richter, the Court further stresses that "an unreasonable application of federal

5   law is different from an incorrect application of federal law." 131 S. Ct. 770, 785 (2011) (citing

6   Williams, 529 U.S. at 410) (emphasis in original).   "A state court's determination that a claim

7   lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

8   correctness of the state court's decision." Id. at 786 (citing Yarborough v. Alvarado, 541 U.S.

9   653, 664 (2004)). Further, "[t]he more general the rule, the more leeway courts have in reading

10  outcomes in case by case determinations." Id.; Renico v. Lett, 130 S. Ct. 1855, 1864 (2010).

11  "It is not an unreasonable application of clearly established Federal law for a state court to

12  decline to apply a specific legal rule that has not been squarely established by this Court."

13  Knowles v. Mirzayance, 556 U.S. 111, 122, 129 S. Ct. 1411, 1419 (2009) (quoting Richter, 131

14  S. Ct. at 786).

15              2.      Review of State Decisions

16          "Where there has been one reasoned state judgment rejecting a federal claim, later

17  unexplained orders upholding that judgment or rejecting the claim rest on the same grounds."

18  See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  This is referred to as the "look through"

19  presumption.  Id. at 804; Plascencia v. Alameida, 467 F.3d 1190, 1198 (9th Cir. 2006).

20  Determining whether a state court's decision resulted from an unreasonable legal or factual

21  conclusion, "does not require that there be an opinion from the state court explaining the state

22  court's reasoning." Richter, 131 S. Ct. at 784-85. "Where a state court's decision is

23  unaccompanied by an explanation, the habeas petitioner's burden still must be met by

24  showing there was no reasonable basis for the state court to deny relief." Id. (" This Court now

25  holds and reconfirms that § 2254(d) does not require a state court to give reasons before its

26  decision can be deemed to have been 'adjudicated on the merits.").

27          Richter instructs that whether the state court decision is reasoned and explained, or

28  merely a summary denial, the approach to evaluating unreasonableness under § 2254(d) is

1  the same: "Under § 2254(d), a habeas court must determine what arguments or theories

2  supported or, as here, could have supported, the state court's decision; then it must ask

3  whether it is possible fairminded jurists could disagree that those arguments or theories are

4  inconsistent with the holding in a prior decision of this Court." Id. at 786.  Thus, "even a strong

5  case for relief does not mean the state court's contrary conclusion was unreasonable."  Id.

6  (citing Lockyer v. Andrade, 538 U.S. at 75).  AEDPA "preserves authority to issue the writ in

7  cases where there is no possibility fairminded jurists could disagree that the state court's

8  decision conflicts with this Court's precedents."  Id.  To put it yet another way:

> 9   As a condition for obtaining habeas corpus relief from a federal court, a
> 10  state prisoner must show that the state court's ruling on the claim being
> presented in federal court was so lacking in justification that there was an error
> 11  well understood and comprehended in existing law beyond any possibility for
> fairminded disagreement.

12  Id. at 786-87.  The Court then explains the rationale for this rule, i.e., "that state courts are the

13  principal forum for asserting constitutional challenges to state convictions." Id. at 787.  It

14  follows from this consideration that § 2254(d) "complements the exhaustion requirement and

15  the doctrine of procedural bar to ensure that state proceedings are the central process, not

16  just a preliminary step for later federal habeas proceedings." Id. (citing Wainwright v. Sykes,

17  433 U.S. 72, 90 (1977)).

18  ### 3.    Prejudicial Impact of Constitutional Error

19      The prejudicial impact of any constitutional error is assessed by asking whether the

20  error had "a substantial and injurious effect or influence in determining the jury's verdict."

21  Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 121 22

22  (2007) (holding that the Brecht standard applies whether or not the state court recognized the

23  error and reviewed it for harmlessness).  Some constitutional errors, however, do not require

24  that the petitioner demonstrate prejudice.  See Arizona v. Fulminante, 499 U.S. 279, 310

25  (1991); United States v. Cronic, 466 U.S. 648, 659 (1984).  Furthermore, where a habeas

26  petition governed by AEDPA alleges ineffective assistance of counsel under Strickland v.

27  Washington, 466 U.S. 668 (1984), the Strickland prejudice standard is applied and courts do

28  not engage in a separate analysis applying the Brecht standard.  Avila v. Galaza, 297 F.3d

911, 918, n. 7 (2002).  <u>Musalin v. Lamarque</u>, 555 F.3d at 834.

## III.   REVIEW OF PETITION

Petitioner asserts a number of due process violations in his petition. The Court's analysis is dedicated to analyzing whether: 1.) The evidentiary standard establishing Petitioner's guilt fell below due process standards, 2.) Petitioner was denied his due process right to present witnesses, and 3.) Petitioner was denied his due process right to a competent investigative employee. The remaining claims are not cognizable as they fail to address a violation of federal law.

### A.   State Court Opinion

The last reasoned state court decision denying Petitioner's habeas petition is from the Kings County Superior Court on August 20, 2009. The court explained:

> Petitioner, JOSE AVINA ("Petitioner"), filed a petition for writ of habeas corpus on March 24, 2009 ("petition"). Petitioner claims that in connection with Rules Violation Report, Log No. 4B-08-09-031 (Fighting), he was denied due process and the finding of guilt was not supported by a preponderance of the evidence. Specifically, Petitioner complains that he was denied the presence of <u>requested</u> witnesses. Petitioner also claims that he was found guilty of the offense without any opportunity to receive and review the investigative employee report and/or examine witnesses. Petitioner contends that Inmate Ramirez confirmed to prison official that he and Petitioner had not engaged in a fight. Consistent with Petitioner's defense to the subject disciplinary charge, the medical records attached to the petition confirm that Inmate Ramirez told prison officials that he had sustained the relevant injuries when he blacked-out and fell against the sink. Petitioner's claim that he submitted a request for witnesses to his investigative employee is supported by the declaration of Inmate A. Martinez attached to the petition.
>
> On May 13, 2009, an Order for Service of Informal Response to Petition for Writ of Habeas Corpus was filed. Respondent's Informal Response was received on June 18, 2009. Petitioner's Reply to the Informal Response was filed on July 23, 2009.
>
> In determining whether an order to show cause should issue, the court must accept Petitioner's specific factual allegations as true. (Cal. Rules of Court, rule 4.551(c)(1).) Accordingly, the court must accept as true the following fact-specific allegations set forth by Petitioner: (1) on September 27, 2008, Petitioner informed Investigative Employee D. Jackson that he had a written questionnaire for witnesses to attend the Rules Violation Report Hearing; (2) The witnesses requested by Petitioner included alleged victim Inmate Ramirez and Correctional Officer Garcia; and (3) Victim Inmate Ramirez would have testified that he had not engaged in any fight with Petitioner and, instead, had fallen during a black-out and hit the sink. Petitioner does not allege that he requested an opportunity to cross-examine either the reporting employee or Licensed Vocational Nurse Gray. In addition, Petitioner does not provide an explanation for the scratches and abrasions found on his chest, left and right arm, left hand, upper right shoulder, right back arm, and right knee following the charged "fight" on September 22, 2008.

A prisoner is entitled to due process at a disciplinary hearing, but not to the same rights as a defendant at a criminal trial (*In re Estrada* (1996) 47 Cal. App. 4th 1688, 1694.) Unlike a guilty finding at a criminal trial, a disciplinary finding requires only "*some*" supporting evidence to satisfy due process concerns. (*Superintendent v. Hill* (1985) 472 U.S. 445, 455-456, *italics added*; *In re Zepeda* (2006) 141 Cal. App. 4th 1493, 1498.) This standard "does not require an examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." (*Superintendent v. Hill*, supra, 472 U.S. at pp. 455-456.) In this case, even if Inmate Ramirez had been allowed to testify that no fight had occurred, Petitioner's documented and unexplained injuries would provide "some evidence" in the record to support a finding of guilt on behalf of the Senior Hearing Officer. Given their noted placement and number, the Senior Hearing Officer's conclusion that injuries suffered by Petitioner were "consistent with [his] being involved in a cell fight", appears neither arbitrary nor irrational."

(Answer at 42-43.)

## B.   Due Process

### 1.   Some Evidence Standard

The law concerning a prisoner's Fourteenth Amendment liberty interest in good time credit is set forth in Wolff v. McDonnell, 418 U.S. 539 (1974). While the United States Constitution does not guarantee good time credit, an inmate has a liberty interest in good time credit when a state statute provides such a right and delineates that it is not to be taken away except for serious misconduct. See id. at 557 ("It is true that the Constitution itself does not guarantee good time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior."); id. ("[T]he State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance."); id. at 558 (holding that "[s]ince prisoners in Nebraska can only lose good time credits if they are guilty of serious misconduct, the determination of whether such behavior has occurred becomes critical, and the minimum requirements of procedural due process appropriate for the circumstances must be observed").

Prisoners cannot be entirely deprived of their constitutional rights, but their rights may be diminished by the needs and objectives of the institutional environment. Wolff, 418 U.S. at 539. Prison disciplinary proceedings are not part of a criminal prosecution, so a prisoner is

1   not afforded the full panoply of rights in such proceedings. Id. at 556. Thus, a prisoner's due

2   process rights are moderated by the "legitimate institutional needs" of a prison. Bostic v.

3   Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989) (citing Superintendent, etc. v. Hill, 472 U.S. 445,

4   454 455 (1984)).

5        When a prison disciplinary proceeding may result in the loss of good time credits, due

6   process requires that the prisoner receive: (1) advance written notice of at least 24 hours of

7   the disciplinary charges; (2) an opportunity, when consistent with institutional safety and

8   correctional goals, to call witnesses and present documentary evidence in his defense; and

9   (3) a written statement by the fact finder of the evidence relied on and the reasons for the

10  disciplinary action. Hill, 472 U.S. at 454; Wolff, 418 U.S. at 563-567.

11       In addition, due process requires that the decision be supported by "some evidence."

12  Hill, 472 U.S. at 455 (citing United States ex rel. Vajtauer v. Commissioner of Immigration, 273

13  U.S. 103, 106 (1927)). In Hill, the United States Supreme Court explained that this standard

14  is met if "there was some evidence from which the conclusion of the administrative tribunal

15  could be deduced . . ." Id. "Ascertaining whether this standard is satisfied does not require an

16  examination of the entire record, independent assessment of the credibility of witnesses, or

17  weighing of the evidence." Hill, 472 U.S. at 456. Instead, "the relevant question is whether

18  there is any evidence in the record that could support the conclusion reached by the

19  disciplinary board." Id. at 455 456. The Court justified this lesser standard as follows:

20
21          We decline to adopt a more stringent evidentiary standard as a constitutional
            requirement. Prison disciplinary proceedings take place in a highly charged
22          atmosphere, and prison administrators must often act swiftly on the basis of
            evidence that might be insufficient in less exigent circumstances. The
23          fundamental fairness guaranteed by the Due Process Clause does not require
            the courts to set aside decisions of prison administrators that have some basis
24          in fact. Revocation of good time credits is not comparable to a criminal
            conviction, and neither the amount of evidence necessary to support such a
25          conviction, nor any other standard greater than some evidence applies in this
            context.

26  Id. at 456. (Citations omitted.)

27       "The Federal Constitution does not require evidence that logically precludes any

28  conclusion but the one reached by the disciplinary board." Hill, 472 at 457. Even where, as in

Hill, the evidence in the case "might be characterized as meager," if "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary," those findings must be upheld. Id. Thus, if the procedures listed above are afforded to an inmate, and "some evidence" supports the hearing officer's decision, the requirements of due process are satisfied. <u>Hill</u>, 472 U.S. at 455; <u>Bostic v. Carlson</u>, 884 F.2d at 1269-1270.

Petitioner challenges the sufficiency of the evidence used to establish his guilt for fighting. While Petitioner contends that there was not a preponderance of the evidence to support his guilty verdict, this is not the evidentiary standard upon which federal courts may review prison disciplinary hearings. Instead, as stated above, the standard is less stringent and only requires "some evidence". The evidence supporting Petitioner's guilty verdict included a rules violation report and a medical report of injuries to both Petitioner and Ramirez. (Answer, Ex. 7.) According to the rules violation report, Nurse Gray was conducting medical rounds when she noticed bruising on Inmate Ramirez's face. Inmate Ramirez shared a cell with Petitioner.  Both inmates were removed from the cell for medical examination. The medical report revealed the following injuries to Ramirez: "Abrasions/scratch to upper back and left knee. Active bleeding under left eye and nose. Bruised/discolored area under left eye, nose, left ear, and head. Cut/laceration under left and right eye and nose. Reddened area to top of head." Petitioner's injuries included: "Abrasions/scratch to upper chest, left and right arm, left hand, and upper right shoulder. [Dried blood and] Scrape to upper right back areas, and reddened area to right knee." (<u>Id.</u>) The disciplinary report noted that the injuries to both inmates were consistent with being involved in a physical altercation. (<u>Id.</u>) The evidence presented at the hearing, and relied upon by the hearing officer, satisfies the some evidence standard. The extent of the injuries to Ramirez were more consistent with injuries from fighting than from a fall. The fact that Petitioner and Ramirez deny their injuries came from a physical alteration does not alter the conclusion that the hearing officer's decision was supported by some evidence. Therefore, the state court reasonably concluded there was some evidence to uphold the decision of the hearing officer.

/////

1

## 2.   Right to Present Witnesses

The right to call witnesses at a disciplinary hearing is limited. <u>Baxter v. Palmigiano</u>, 425 U.S. 308, 322 (1976). It is subject to "mutual accommodation between institutional needs and objectives and the provisions of the Constitution." <u>Id.</u> at 321 (citing <u>Wolff</u>, 418 U.S. at 556). For instance, prison officials have the discretion to refuse a witness at a disciplinary hearing to "keep the hearing within reasonable limits". <u>Wolff</u>, 418 U.S. at 566. Other appropriate reasons for denying a witness include: "[I]rrelevance, lack of necessity, or the hazards presented in individual cases." <u>Id.</u>; <u>Pannell v. McBride</u>, 306 F.3d 499, 503 (7th Cir.2002). Furthermore, the inmate must disclose the anticipated "nature of the testimony each witness will deliver in order to allow the committee to determine whether institutional concerns would preclude calling the witnesses." <u>Bostic v. Carlson</u>, 884 F.3d 1267, 1273 (9th Cir. 1989).

The United States Supreme Court explained that "[w]e should not be too ready to exercise oversight and put aside the judgment of prison administrators" due to the nature of prison and the need for discretion. <u>Id.</u> Due process is met when the reason the witness was refused is in accordance with "institutional safety or correctional goals." <u>Ponte v. Real</u>, 471 U.S. 491, 495 (1985) (citing <u>Wolff</u>, 418 U.S. 566). Conversely, due process review is appropriate where evidence of arbitrary decision making is present. <u>Wolff</u>, 418 U.S. at 558.

Prison officials' errors in denying a request to call a witness are subject to harmless error review. <u>Howard v. United States Bureau of Prisons</u>, 487 F.3d 808, 813 (10th Cir. 2007) (citing <u>Grossman v. Bruce</u>, 447 F.3d 801 (10th Cir. 2006)); <u>Powell v. Coughlin</u>, 953 F.2d 744 (2nd Cir. 1991; <u>Lee v. Kramer</u>, WL 4507584, at *4 (E.D. Cal. October 7, 2008). Accordingly, even when prison officials error in denying requested witnesses, the Court must deny Petitioner's request for a writ of habeas corpus if the error was "harmless." A deprivation of due process will be harmless and a habeas petition will be denied unless the error had a "substantial and injurious effect or influence in determining the [factfinder's] verdict." <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637, 113 S. Ct. 1710, 123 L.Ed.2d 353 (1993). Thus, Petitioner must show that he was prejudiced so as to justify federal habeas relief. See <u>Id.</u>; <u>see</u> <u>also</u> <u>Tien v. Sisto</u>, No. 07–2436, 2010 U.S. Dist. WL 1236308, at *4 (E.D. Cal. Mar. 26, 2010) ("While

1  neither the United States Supreme Court or the Ninth Circuit Court of Appeals has spoken on

2  the issue, numerous federal Courts of Appeals, as well as courts in this district, have held that

3  a prisoner must show prejudice to state a habeas claim based on an alleged due process

4  violation in a disciplinary proceeding.") (citing Pilgrim v. Luther, 571 F.3d 201, 206 (2d Cir.

5  2009); Howard, 487 F.3d at 813; Piggie v. Cotton, 342 F.3d 660, 666 (7th Cir. 2003); Elkin v.

6  Fauver, 969 F.2d 48, 53 (3d Cir. 1992); Poon v. Carey, No. 05–0801, 2008 U.S. Dist. WL

7  5381964, at *5 (E.D. Cal. Dec.22, 2008); Gonzalez v. Clark, No. 07–0220, 2008 U.S. Dist WL

8  4601495, at *4 (E.D. Cal. Oct. 15, 2008)).

9        Petitioner claims that he requested that Inmate Ramirez, Nurse Gray, and three

10  correctional officers testify. (Pet., Ex. H.) Petitioner's Investigative Employee's report and the

11  adjudication report both contradict Petitioner's claim that he requested witnesses at his

12  hearing as both documents state that Petitioner did not request any witnesses. (Pet., Ex. F.)

13        Yet, even if the Court assumes that Petitioner did request witnesses, their failure to

14  appear and testify was not a violation of his due process rights. Petitioner has not shown

15  prejudice resulting from the failure to call his potential witnesses, or the failure to consider his

16  witness list, as he has not shown that the witnesses' testimony would have been sufficient to

17  rebut the inference that Petitioner was engaged in a physical altercation. Petitioner explains

18  that Inmate Ramirez would have testified that his injuries were a result of a blackout while

19  washing himself at the sink. Yet, this exact anticipated testimony was already included in the

20  evidence weighed by the hearing officer. (See Answer, Ex. 7.) Further, Petitioner's potential

21  inquiries to Nurse Gray included:

22        1.) What was the character and behavior of each inmate upon approaching cell?

23        2.) When you approached cell what was Avina doing?

24        3.) What did i/m Ramirez say in rotundra how he got abrasions?

25  (Pet., Ex. H.)

26        Petitioner's first two questions for Nurse Gray and Correctional Officer Avon are

27  irrelevant to Petitioner's charges. There is no allegation that either Nurse Gray or Officer Avon

28  witnessed Petitioner and Inmate Ramirez engaging in a physical altercation. Even if the

potential witnesses gave the most favorable testimony and suggested that the inmates were not combative, their injuries still indicated their involvement in a previous physical altercation regardless of   their later demeanor. Petitioner's questions for Officer Diaz regarding Petitioner's behavior and statements before being handcuffed do not negate the hearing officer's findings that the physical injuries were derived from a physical altercation. Lastly, Petitioner's questions for Officer Garcia regarded:

> 1.) Whether Officer Garcia witnessed any scrapes on Petitioner when he came in from the yard the night prior to the charges, and

> 2.) Whether it has been three weeks since Petitioner has been able to use haircuts/clippers?

(Id.) Petitioner had the opportunity to disclose what he believed to be the true nature of his injuries. Yet, the record indicates that he never made any claim at his hearing that the injuries resulted from him falling in the yard the night prior. Further, there is no explanation as to the relevance of Petitioner's second question regarding his ability to use haircuts/clippers. Finally, his injuries, which included injuries on various parts of his body, refute a claim that he fell and scraped himself the night before. Accordingly, Petitioner has not shown that he was prejudiced so as to justify federal habeas relief, even if his witnesses were denied.

3.      Habeas Relief is not Warranted with Respect to Denial of Evidence

Petitioner claims he was denied his right to present videotape evidence at his disciplinary hearing. Petitioner explains that this evidence would have shown his injuries were actually derived from falling in the yard the night prior to the alleged fight.

Petitioner did not assert his right to present videotape evidence in his Superior Court petition, but included it in both his California Supreme Court and Federal petition for relief. The California Supreme Court summarily denied Petitioner's claims, including his right to present videotape evidence. Thus, this Court will review Petitioner's evidence claim in accordance with the Richter standard of reasonableness.

A prisoner facing disciplinary charges can "present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or

correctional goals." <u>Wolff</u>, 418 U.S. at 566. If prison staff in fact denied Petitioner his due process right to present evidence, Petitioner must satisfy the <u>Brecht</u> standard in order to possess a claim for relief.

The record contradicts Petitioner's claim that he requested the videotape evidence at his hearing. (Pet., Ex. F.) Yet, assuming that Petitioner did request and was denied such evidence, the error was harmless. Evidence weighed by the hearing officer included Inmate Ramirez's explanation that his injuries were the result of a blackout. Still, the hearing officer found staff reports that the injuries were consistent with a physical altercation more compelling. Even if Petitioner did fall in the yard the night prior and this was shown on the videotape, both his injuries and the active bleeding wounds on Inmate Ramirez were found to be consistent with a physical fight. As stated above, this satisfies the some evidence standard. Accordingly, Petitioner lacks a claim for relief.

4.   Habeas Relief is not Warranted with Respect to Petitioner's Claim Regarding the Denial of an Investigative Employee

Petitioner alleges that his investigative employee falsely documented that Petitioner did not request witnesses or have any questions. Assuming that Petitioner did tell his investigative employee that he requested witnesses, his due process rights were not violated. As stated above, if there was an error denying Petitioner his witnesses or videotape evidence, it was harmless. <u>See</u> <u>Brecht</u>, 507 U.S. at 637. Petitioner did not indicate what substantive information any witnesses would have provided in support of his defense. Accordingly, Petitioner's claim lacks merit.

**C.    Habeas relief is not Warranted with Respect to Remaining Claims**

Petitioner's remaining claims do not allege a violation of federal law. Petitioner's claim that his hearing was held at his cell door is not cognizable.  There is no requirement that disciplinary hearings be held at a specific, secured hearing room. <u>Wolff</u>, 418 U.S. 539. Further, Petitioner's claim that he did not receive the investigative employee's report before his disciplinary hearing is contradicted by the record which states he was given all relevant documents more than twenty-four hours before his hearing. (Pet., Ex. 7, p. 1, 3.) Lastly, Petitioner claims that prison staff was prohibited from concluding the injuries on both inmates

were consistent with a physical altercation. Petitioner cites to California Code of Regulations 15 § 3354 for supporting law. As stated in <u>Pulley v. Harris</u>:

> Under 28 U.S.C. § 2241, a writ of habeas corpus disturbing a state-court judgment may issue only if it is found that a prisoner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3) (1976). A federal court may not issue the writ on the basis of a perceived error of state law.

465 U.S. 37, 41 (1984).

Thus, Petitioner's claims supported by state law are not cognizable in habeas review.

## IV.   <u>RECOMMENDATION</u>

Accordingly, the Court **RECOMMENDS** that Petitioner's petition for writ of habeas corpus relief be **DISMISSED** for failure to state a cognizable claim.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after the date of service of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the Objections shall be served and filed within fourteen (14) days after service of the Objections. The Finding and Recommendation will then be submitted to the District Court for review of the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(c). The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   July 22, 2012                    /s/ *Michael J. Seng*
                                          UNITED STATES MAGISTRATE JUDGE